# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### ***

| | |
|---|---|
| UNITED STATES OF AMERICA | 2:11-cr-00143-JCM-VCF |
| Plaintiff, | **REPORT AND RECOMMENDATION ON** |
| vs. | **MOTION FOR RECONSIDERATION (#49)** |
| DAVID GRAY, | |
| Defendant. | |

## REPORT & RECOMMENDATION

Before the court is the government's Motion to Reconsider Report and Recommendation of the United States Magistrate Judge Granting Defendant's Motion To Suppress for Fourth Amendment Violation.  (#49).  Defendant Gray filed a Notice in Support of the Report and Recommendation (#50) and an Opposition to the government's motion (#51).  The government filed a Reply in support of its motion.  (#52).  As the government seeks to reopen the evidentiary hearing in addition to asking the court to reconsider the report and recommendation, the presiding District Judge referred the motion to the undersigned Magistrate Judge who conducted the original evidentiary hearing.  Local Rule IB 1-4 (permitting a district judge to refer a motion to the magistrate judge to "review it, conduct any necessary evidentiary or other hearings and file findings and recommendations for disposition by the district judge").  The court held a hearing on the motion to reconsider (#49) on May 9, 2012.  (#55).

## PROCEDURAL FACTS

Based on evidence discovered during a search of defendant Gray's car, on April 12, 2011, a Federal Grand Jury returned an indictment charging defendant Gray with one count of Possession of a

Firearm by A Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).  (#1).  On April 27, 2011, defendant Gray pleaded not guilty to the one count indictment, and the Federal Public Defenders Office was appointed to represent him.  (#17).  The court ordered defendant Gray detained and remanded to custody.  *Id.*  On December 30, 2011, defendant Gray filed a motion to suppress for Fourth Amendment violations, and requested an evidentiary hearing.  (#34). This court scheduled an evidentiary hearing for February 27, 2012.  (#40).  On February 28, 2012, the court entered an order continuing the trial date until May 21, 2012.  (#45).  By stipulation and order (#42), the evidentiary hearing was continued until March 8, 2012.

Sergeant Johnson, Officer Martin, and Parole and Probation Officer Pendleton testified at the March 8, 2012, evidentiary hearing.  (#46).  The court took defendant's motion to suppress (#34) under submission and issued a report and recommendation on March 27, 2012.  (#47).  The court stated that "[t]he Government sustained its burden of proving by a preponderance of the evidence, taking into account the totality of the circumstances, that the officer directing defendant's stop had a reasonable suspicion, based on objective, particularized facts, that the defendant was a supervisee subject to a warrantless search."  *Id.*  However, the court held that "[t]he Government failed to prove by a preponderance of the evidence that the search of the car, conducted after the stop, was (1) based on a reasonable, particularized and objective basis for suspecting defendant of criminal activity, (2) based on the searching officer's actual prior knowledge of defendant's status as a supervisee, (3) properly narrowed in scope to fit the purpose of the investigatory stop, (4) consensual, or (5) justified for any other reason."  *Id.*  The court recommended that the motion to suppress (#34) be granted.  *Id.*

Any objection to the report and recommendation was due by April 13, 2012.  *Id.*  On April 13, 2012, the government filed the instant motion (#47), seeking a reconsideration of the report and recommendation, or, in the alternative, to reopen the evidentiary hearing.  (#49).  On the same day, defendant Gray filed a notice in support of the report and recommendation asking the district judge to

adopt the findings of the magistrate judge.  (#50).  On April 19, 2012, defendant Gray filed an opposition to the government's motion for reconsideration (#51), and on April 26, 2012, the government filed a reply (#52).  On May 2, 2012, the court issued a minute order setting an oral argument hearing on the motion for reconsideration (#49) for May 9, 2012.  (#54).  The court stated in the minute order that the hearing was not an evidentiary hearing.  *Id.*

The court held an oral argument hearing on May 9, 2012, and took the government's motion (#49) under submission.  (#55).  On May 9, 2012, the parties filed a stipulation to continue trial dates (#56), and on May 16, 2012, the court signed the stipulation, continuing the trial date until July 23, 2012 (#57).

## DISCUSSION

**A.    Arguments**

**1.    Government's Motion**

The government asks this court to reconsider its recommendation, or, in the alternative, to reopen the evidentiary hearing to permit it to present evidence demonstrating the timing of the search in relation to the searching officers learning of defendant's status as a probationer.  (#49).  In support of the relief sought, the government asserts that (1) it did not present evidence relating to the timing because the basis of defendant's motion to suppress was that there was no reasonable suspicion to stop the defendant's vehicle, (2) "the testimony of the witnesses during the evidentiary hearing establishes by a preponderance of the evidence that the search following the stop of defendant's car was related to defendant's status as a supervisee," and (3) the government can present additional evidence establishing the exact time-line of the search of defendant's car if the court reopens the evidentiary hearing.  *Id.*

**a. Request for Reconsideration**

The government argues that the only dispositive question raised by defendant in his motion to suppress was whether the officers had the reasonable suspicion necessary to stop the vehicle defendant

was driving.  (#49).  The government asserts that it addressed this argument in its opposition to the motion to suppress (#38), and that it also addressed the fact "that the defendant was subject to a search clause pursuant to his conditions of probation as a Probationer in the State of Nevada." *Id.*

The government asserts that it could have presented evidence of the time-line of the search, but that it did not because defendant only challenged the initial stop in his motion.  *Id*.  The government argues that defendant Gray raised the argument regarding the timing of the stop and subsequent search for the first time in closing arguments, when defense counsel argued that there was nothing before the court to indicate when defendant's car was searched.  *Id.*(citing Hearing Transcript at pages 175-76).  The government asserts that it addressed this statement during the hearing, and noted that the "stop was really at issue..." *Id.*(citing Hearing Transcript at page 178).  The government "acknowledges that there was no specific testimony establishing an exact time-line of the search because it addressed the "stop" issue which was raised in defendant's motion," but asserts that "[n]onetheless, the record clearly supports that the officers were invoking the search clause of probationers on the date in question." *Id.*

To support this contention, the government states that the witnesses demonstrated that (1) the purpose of the "Operation Garage Clean-Up" was to stop and identify individuals on parole or probation (hereinafter "supervisees"), and invoke the search clauses accordingly, (2) the officers were searching vehicles based on the search clause or, in the alternative, based on a "hit" by a Nevada Highway Patrol drug-sniffing dog, (3) the P&P was conducting a search operation and officers were not doing general searches of vehicles entering the garage, (4) officers made contact with the occupants of the vehicles before conducting a search, (5) the purpose of the P&P officers making contact with the occupants of the vehicle was to determine whether or not they were a supervisee subject to the search clause, and (6) that there was a policy, which was followed, to initially determine an individual's status as a supervisee so that the officers could then properly invoke the search clause.  *Id.*  The government also asserts that "[i]f the officers involved in the operation in the garage had not made a determination regarding Gray's

status as a supervisee, they would not have known to contact his probation officer to advise him of what was going on in the P&P parking garage.[1]" *Id.*

### b. Request to Reopen Hearing

The government asserts that after reviewing this court's report and recommendation, the government "contacted Nevada P&P to confirm its understanding of the basis for the search of defendant's vehicle and the time-line for that search." (#49). The government asks this court to reopen the evidentiary hearing to allow the government to introduce evidence establishing the exact time-line of the incident. *Id.* Specifically, the government states that if the court reopened the hearing, the government would call Sgt. James Shubert, "who was one of the officers that approached the driver's side of [d]efendant's vehicle after it was stopped," to "testify that he remembers speaking with the [d]efendant for approximately five to ten minutes before he was removed from the vehicle and the search began." *Id.* The government also asserts that Sgt. Shubert will testify that "during the course of their conversation [defendant] identified himself as a supervisee," and "that he is sure the defendant identified himself as a supervisee, because if the defendant had not identified himself, Sgt. Shubert would have taken other steps to determine the defendant's status, as no vehicle search was initiated until such a determination was made." *Id.* The government will also call P&P Officer W. Lefler, who will testify "that while he does not recall exactly who determined the defendant was on probation, he knew the defendant was a probationer, otherwise he would not have searched the car.[2]" *Id.*

---

[1]  Given (1) the requirements of *Moreno v. Baca,* 431 F.3d 633 (9th Cir. 2005) (parole status must be known to the officer at the moment of the search) and (2) the ability of the government to introduce direct evidence of the searching officers' knowledge of defendants probation status prior to the search, the court will not infer the requisite state of mind from circumstantial evidence.

[2]  The proffered testimony of Sgt. Shubert is contradicted by the prior testimony of Sgt. Johnson and Officer Martin, who stated that after defendant's vehicle was stopped, defendant was ordered to park in a parking space and was pulled or ordered from the car, and did not mention a 5-10 minute conversation between the initial stop and the time the officers pulled or ordered defendant out of the car. (#48 Hearing Transcript page 69, lines 5-9, 6-11, and 22-25, page 70, lines 1-13, page 83, lines 17-25, and page 89, lines 11-12). Sgt. Johnson specifically testified that there was no dog sniff before defendant Gray was pulled or ordered from the car. (#48 Hearing Transcript page 70, lines 10-13). Both Shubert's and Lefler's proffered testimony are equivocal, relying on standard procedures and assertions to the effect that the vehicle would not have been searched had defendant Gray not identified himself as a supervisee. (#49).

The government argues that since the case remains in "pre-trial posture," the defendant will suffer no prejudice if the hearing was reopened, as he will have "sufficient time to respond to and argue against any additional evidence presented." *Id.*

### 2.    Defendant's Opposition

The defendant argues that the government "had notice prior to the hearing from the pleadings that the issue of whether the search of Mr. Gray occurred prior to or subsequent to his identification as a probationer was in dispute." (#51). In the government's opposition to the motion to suppress, the government stated that "[b]y the time they searched defendant's vehicle, the officers were aware of his status as a probationer." (#38). The government used this assertion to distinguish the case from *Moreno v. Baca,* 431 F.3d 633 (9th Cir. 2005). *Id.* In defendant's reply brief, he addressed the government's assertion and stated that "while the government indicates in its response that the search was not conducted until Mr. Gray was identified as a probationer, the reports completed at the time of the arrest do not reflect that fact." (#39). Defendant argues that the government was put on notice that the timing of the search was a disputed issue, yet chose not to produce witnesses to testify as to that issue. (#51).

Defendant Gray asserts that "[i]t is only after this court evaluated the evidence reflected and concluded that there was something lacking, mandating suppression, that the government realized that it was necessary for them to carry their burden." *Id.* The defendant asserts that "[w]hen the government initially rested its case at the suppression hearing, it was apparent that the timing of the seizure of Mr. Gray from his vehicle and the subsequent search was important," that the *only* evidence presented at the hearing relating to the defendant's status was adduced from his probation officer, and that the evidence demonstrated only that defendant was detained and in handcuffs *prior* to his probation officer being contacted. *Id.*

The defendant also asserts that after the close of the evidence, the government produced additional discovery and the court indicated its willingness to allow the government to reopen the

hearing.  *Id.*  The government had this opportunity to reopen the hearing but decided not to.  *Id.*  The defendant argues that the government should not be permitted to reopen the hearing when they "chose not to call necessary witnesses" who were available to testify at the original hearing and the issue was "clearly disputed in the pleadings which gave rise to the suppression hearing."  *Id.*  When the court offered the government the opportunity to reopen the hearing after it rested, defendant argues, the government clearly knew at that time that it had not produced sufficient evidence establishing that the officers knew defendant was on probation prior to the search.  *Id.*  The defendant asks this court to deny the motion to reopen the hearing and to reconsider the recommendation.  *Id.*

**B.      Reconsideration**

**1.      Relevant Law**

Although the Federal Rules of Criminal Procedure are silent on the issue of motions to reconsider in criminal cases, "numerous circuit courts have held that motions for reconsideration may be filed in criminal cases." *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D.Cal. 2005), rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007).  Motions for reconsideration in criminal cases are governed by the rules that govern civil motions for reconsideration, i.e. Rules 59(e) and 60(b).  *Id.* at 1063.  Under Rule 60(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party, (4) the judgment is void, (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable, or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

. . .

### 2.      Reconsideration Not Appropriate

The court finds that the government has not demonstrated that reconsideration is appropriate under any of the grounds enumerated in Rule 60(b).  *Id.*  As more fully addressed in the sections below, the court did not make a mistake in its recommendation or application of the law, and based on the evidence presented at the evidentiary hearing and the clear applicable law, the court's recommendation was not inadvertently entered nor can it be seen as a surprise or the result of excusable neglect.  *Id.* There is no newly discovered evidence as the government does not contend that the new testimony it would present to the court at a reopened evidentiary hearing was unavailable to the government during the original hearing.  (#49).  Rather, the government simply asserts that it did not present such testimonial evidence because it was focusing on the initial stop of the vehicle and not the subsequent search.  *Id.*  Since the government was capable of acquiring this testimonial evidence by contacting "Nevada P&P to confirm its understanding of the basis for the search of defendant's vehicle and the time-line for that search," the testimonial evidence could have been discovered through the government's diligence.  (#49); Fed. R. Civ. P. 60(b).

There are no allegations of fraud, misrepresentation, or misconduct that would warrant reconsideration, and grounds four and five are not applicable to the magistrate judge's recommendation to suppress evidence.  *Id.*  The government has not presented the court with any other reason that justifies reconsideration of the recommendation.  *Id.*  The government's request for reconsideration should be DENIED.  *Id.*

### C.      Reopen Evidentiary Hearing

### 1.      Motion To Suppress

Before the court addresses the request to reopen the evidentiary hearing, the court must examine the issues raised by the defendant and the resulting burden of proof faced by the government at the evidentiary hearing.

### a. Burden of Raising an Issue

### i. Relevant Law

The burden of raising an issue is a "party's obligation to bring an issue to the attention of the trial court and the opposing party..." *People v. Williams,* 973 P.2d 52 (Cal. 1999). The "degree of specificity required for adequate notice by defendant depends on the legal issue raised" and "a defendant must state the grounds for the motion with sufficient particularity to give notice to the prosecution of the sort of evidence it will need to present in response." *Id.* at 58. Although the defendant must "carry the initial burden of informing its opponent and the court of the specific basis for its motion," the defendant is *not* required to "guess what justification the prosecution will offer at the risk of forfeiting the right to challenge that justification." *Id.* at 59.

With regard to a motion to suppress evidence obtained without a search warrant, since the "law enforcement personnel, not the defendant, made the decision to proceed without a warrant, they, not the defendant, are in the best position to know what justification, if any, they had for doing so." *Id.* If the defendant is asserting a specific argument other than lack of warrant, the defendant must specify that argument "as part of their motion to suppress and give the prosecution an opportunity to offer evidence of that point." *Id.* "Once the prosecution has offered a justification for a warrantless search or seizure, defendant must present any arguments as to why that justification is inadequate." *Id.* (Citing *People v. Coleman*, 229 Cal. App. 3d 321, 324-325 (Cal. Ct. App. 1991).

The "determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and a fair opportunity to present responsive evidence." *Id.* at 63. Defendants "are not required to anticipate the prosecution's justifications," the defendants are only required to "respond by pointing out inadequacies in th[ose] justification[s]." *Id.* "Defendants who do not know or hesitate to guess what justification the prosecution might offer, can simply await the prosecution's argument and evidence, and then respond with specific objections." *Id.* at 64. This is

appropriate, however, only after the defendant has met its initial burden of asserting that the search was warrantless and otherwise unreasonable.  *Id.*

### ii. Defendant Met His Burden

In defendant Gray's motion to suppress, he outlined the facts surrounding his arrest, and, as it was clear that the officers acted without a warrant, asserted that reasonable suspicion was necessary. (#34).  Defendant argued that he was "unquestionably seized" when the officers blocked the exit to the garage, and that this seizure was "unconstitutional because the probation officers lacked any reasonable suspicion to justify the stop as required under the Fourth Amendment."  *Id.*   Defendant Gray therefore carried his "initial burden of informing [the government] and the court of the specific basis for [his] motion." *Williams,* at 59.   Defendant Gray was not required in his original motion to "guess what justification the [government] will offer," as the government was in a better position to offer such justifications.  *Id.*

The government provided two justifications for the warrantless search in its opposition to the motion to suppress: (1) that the officers had "reasonable suspicion to stop the defendant's car on the day in question," and (2) that the officers conducted the search pursuant to a warrantless search clause defendant was subject to due to his status as a probationer. (#38).  The government stated that "[b]y the time [the officers] searched defendant's vehicle, the officers were aware of his status as a probationer," and asserted that "[t]his fact distinguishes this case from the *Moreno* case," where the officers did not have prior knowledge of the defendant's status as a supervisee.  *Id.*  Once the government offered these justifications, defendant Gray was required to "present any arguments as to why [the] justification[s] [were] inadequate." *Williams,* at 59.

Defendant Gray addressed the government's arguments relating to his status as a probationer in his reply.  (#39).   Defendant Gray first distinguished cases cited by the government relating to a defendant's status as a probationer, and stated that in both *Samson v. California*, 547 U.S. 843 (2006)

and *United States v. Knights*, 534 U.S. 112 (2001), the officers were aware of the defendants' status as a supervisee, and that in this case, "the government concedes that the Probation Officers were unaware of who was in the car, or the status of that person, prior to stopping the vehicle, and ordering its occupants out of the car." *Id.* The defendant also asserted that "[w]hile the government indicates in its response that the search was not conducted until Mr. Gray was identified as a [p]robationer, the reports completed at the time of the arrest do not reflect that fact." *Id.*

Although defendant Gray did not specifically dispute his status as a probationer and the officer's knowledge thereof in his original motion, defendant sufficiently responded to the government's justifications by pointing out specific inadequacies and attacking the lack of evidence supporting such justifications.  (#39).  This was all defendant Gray was required to do.  *See Williams,* at 64 (holding that a defendant "can simply await the prosecution's argument and evidence, and then respond with specific objections").  Based on the moving papers (#34, #28, and #39) alone, the court finds that defendant Gray met his burden of raising the issues, that the government had "fair notice" of the defendant's argument that there was no evidence supporting the assertion that the officers knew of defendant's status as a probationer, and that the government had a fair opportunity to present responsive evidence during the hearing.  *Id.* at 135.

### b. Burden Of Proof

#### i. Relevant Law

"Generally, the defendant has the burden of showing a constitutional infirmity if a search or seizure was carried out pursuant to a warrant.  *United States v. Esser,* 451 F.3d 1109, 1112 (10th Cir. 2006) (citing *United states v. Maestas,* 2 F.3d 1485, 1491 (10th Cir. 1993)).  On the other hand, if "the police acted without a warrant, the burden of proof is on the prosecution."  *Id; See also Chimel v. California*, 395 U.S. 752 (1969) (holding that when the defendant challenges a warrantless search or seizure the government carries the burden of justifying the agents' actions.); *United States v. Johnson*,

936 F.2d 1082, 1084 (9th Cir. 1991) (holding that in an evidentiary hearing on a motion to suppress evidence due to a Fourth Amendment violation, the Government bears the burden of justifying a warrantless search).

### ii. The Government Did Not Meet Its Burden

Defendant Gray adequately raised the issue and gave the government "fair notice" that he disputed the government's assertion that the officers had prior knowledge of defendant's status as a probationer.  The government had an opportunity to present evidence regarding the searching officers' prior knowledge.   As the government and the defendant both conceded in their moving papers, the law is clear that a searching officer must have prior knowledge of the defendant's status as a supervisee to justify a warrantless search.  (#38 and #39); See *Moreno*, 431 F.3d at 641 ("[P]olice officers cannot retroactively justify a suspicionless search...on the basis of an after-the-fact discovery of...a parole condition."); *Samson*, 547 U.S. at 856 (holding that a search condition validates a search only if the police had advance knowledge that the search condition applied before they conducted the search).  The government had the burden to present evidence during the hearing demonstrating that the officers had prior knowledge of defendant's status as a probationer before conducting the search.  *Chimel*, 395 U.S. 752; *Johnson*, 936 F.2d at 1084.

During the hearing, the government called three witnesses: Sergeant Johnson, Officer Martin, and Parole and Probation Officer Pendleton.  (#46).  Sergeant Johnson testified that on the day in question, while he was stationed at the front entrance, other officers were "invoking the defendants' parole and probation search clauses."  (#48 Hearing Transcript).  Johnson also testified that after defendant Gray's car was stopped, "the other officer came up" and identified the driver and the passenger, and that he was not involved after the stop because he began "stopp[ing] the traffic from coming in the building and [defendant] from exiting."  *Id.*  Johnson also answered "yes," when the

government asked if he expected the parking garage in question "to be frequented by individuals on probation or parole." *Id.*

On cross-examination Johnston testified that during the operation, officers were searching individuals subject to a search clause and based on hits by a drug-sniffing dog. *Id.* Johnson also stated that "it's not the policy of my department to search a non-probationer's car without a search warrant." *Id.* Defense counsel asked Johnson if "at the time [he] stopped the car [he] had [any] idea whether or not...[defendant was] a probationer," and if he in fact "knew nothing about [defendant]." *Id.* Johnson testified that he did not know anything about defendant Gray, and that he did not recall if he received a report on the license plate from the car defendant was driving by the time the defendant's car was stopped. *Id.* The government and defense counsel agreed that the car was not registered to a supervisee. *Id.* Johnson testified that it did not make a difference to him whether the car was registered to a supervisee, because he was going to stop the car regardless. *Id.* Johnson testified that he was not involved in the searching of the car, and that he could not recall who ordered defendant Gray out of the car, because he was directing incoming traffic. *Id.* Johnson also testified that there was no dog sniff before defendant Gray was ordered from the car. *Id.*

Officer Martin testified during the hearing that he stopped the car defendant Gray was driving at the request of Sergeant Johnson, by putting his hand out and telling the car the stop. *Id.* Martin stated that after he stopped the car, "the P&P officers made contact with the occupants of the vehicle," and that he observed the car backing into a parking stall in the garage. *Id.* Martin also testified that since he "didn't make any contact with [the defendant]," he did not remember his name. *Id.* Defendant Gray's probation officer, Officer Pendleton, also testified at the hearing. *Id.* Officer Pendleton testified that he had been supervising defendant Gray since September of 2010, and that defendant Gray was subject to a warrantless search condition. *Id.* Pendleton stated that he had an appointment with defendant Gray on the day in question, and that during the operation, he "was conducting regular monthly reports inside the

office." *Id.* "Once David Gray was already in custody," Pendleton testified, "I was contacted by another officer and I went out to the parking garage and saw him in custody..." *Id.* Pendleton stated that he did not know when the other officers knew of defendant Gray's status as a probationer. *Id.* Pendleton also stated that by the time he arrived in the garage, defendant Gray had already been detained and the gun had already been recovered from the car. *Id.*

As outlined above, the officers that conducted the search did not testify. *Id.* Officer Martin and Sergeant Johnson did not know defendant Gray was a supervisee, nor did they testify as to when or if the searching officers knew of defendant Gray's status as such. *Id.* Officer Pendleton identified defendant Gray as a probationer *after* he was in custody and the search of the vehicle was complete. *Id.* Officer Pendleton did not know when the searching officers learned of his status. *Id.* The court was not presented with any evidence of prior knowledge as required under *Moreno*. *Id.* The government presented testimony regarding only the purpose of the operation, the practice of the officers to search supervisees pursuant to a warrantless search clause, and the fact that Officer Pendleton identified defendant Gray as a probationer *after* the search. *Id.* The government did not meet its burden of proof. See *Chimel*, 395 U.S. 752; *Johnson*, 936 F.2d at 1084; *Moreno*, 431 F.3d at 641.

    2.      **Reasonable Explanation**

        **a. Relevant Law**

Although the decision on reopening a hearing is committed to the sound discretion of the trial judge, "courts should be extremely reluctant to grant re-openings." *United States v. Blankenship,* 775 F.2d 735, 740 (6th Cir. 1985) (citing *United States v. Billingsley*, 474 F.2d 63, 67 (6th Cir.), *cert denied,* 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973)). "Reopening is often permitted to supply some technical requirement such as the location of a crime—needed to establish venue—or to supply some detail overlooked by inadvertence." *Id.* (citing *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980)). In determining whether to reopen a hearing, the trial court must consider a number of

factors, including "the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion." *Id.* at 741(citing *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983)).  The prejudice to the opposing party and the timing of the motion are critical factors for the court's consideration. *Id.*

The party seeking to reopen must have a "reasonable explanation for failure to present the evidence in its case-in-chief," and the belated receipt of the testimony should not "imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered." *Id.* (citing *United States v. Larson*, 596 F.2d 759, 778 (8th Cir.1979)).  When the government moves to reopen an evidentiary hearing, the court "must evaluate [the government's] explanation [for failing to present the evidence initially] and determine if it is both reasonable and adequate to explain why the government initially failed to introduce evidence that may have been essential to meeting its burden of proof." *United States v. Kithcart,* 218 F.3d 213, 220 (3rd Cir. 2000).

"Consideration should be given to whether the law on point at the time was unclear or ambiguous, as well as to whether new evidence came to light after the proceedings closed." *United States v. Coward,* 296 F.3d 176, 181-182 (3rd Cir. 2002) (citing *Kithcart II,* 218 F.3d at 220) (finding reopening inappropriate because the government "was fully aware of what it had to establish to successfully oppose Kithcart's suppression motion" and nothing suggested "that evidence was either newly discovered or unavailable during the first hearing"); *Blankenship,* 775 F.2d at 741.

### b. Government's Explanation Insufficient

In the government's motion and during oral argument, the government asserted that it did not present testimony from the searching officers as to when the officers learned of defendant Gray's status as a probationer, because the basis of defendant's motion to suppress was that there was no reasonable suspicion to stop the defendant's vehicle, and the government believed that "the testimony of the

witnesses during the evidentiary hearing establishes by a preponderance of the evidence that the search following the stop of defendant's car was related to defendant's status as a supervisee." (#49 and #55).

During the hearing on the motion to reconsider (#49), the court asked the government to clarify its explanation.  (#55).  In response, the government stated that the government had Sergeant Johnson testify "to establish what was going on that day in the operation, what happened," and that Officer Pendleton was called to testify that he knew defendant Gray as a probationer and that "they called [him] to say [his] probationer was under arrest in the garage."  *Id*.  The government then stated, that when looking at a preponderance standard, putting together the totality of the circumstances of "why the operation was taking place, the testimony that...they do not search individuals who are not on probation without search warrants," and the testimony of Officer Pendleton saying that he identified Gray as a probationer after the officer called him, the government believed that it had met its burden by a preponderance of the evidence that [the search] was related to the stop."  *Id*.  The government continued by stating that "there was evidence [presented at the evidentiary hearing] establishing that the subsequent search was related to why the stop and the whole operation was taking place...."  *Id*.

In evaluating the necessary factors in relation to the government's explanation, the government's explanation is unreasonable.  See *Blankenship,* 775 F.2d at 740-41; *Kithcart,* 218 F.3d at 220; *Coward,* 296 F.3d at 181-182.  As previously stated, the government argues in its motion that "[i]f the [c]ourt cannot make a ruling on the constitutionality of the search without additional evidence," the government could present testimony to the court "which could clarify the timeline of events after the initial stop of defendant's car."  (#49).  The purpose of the government's request to reopen the hearing is to provide testimony to meet its burden of proof that the defendant's status as a probationer was known prior to the search.  *Id*.  The government's burden of proof, however, is not merely a "technical requirement," but "a critical requirement of criminal law."  *Coward,* 296 F.3d at 182.  As such, reopening for the purpose of permitting this testimony is not appropriate.  *Id.*

16

The dispute regarding the searching officers' prior knowledge was raised in the moving papers, the law pertaining to that issue is clear (requirement to establish prior knowledge under *Moreno*), and the government admittedly had the ability to call officers to testify as to the timing of their knowledge of defendant Gray's status.   See *Coward*, 296 F.3d at 182 (finding the government's explanation unreasonable when "[n]othing suggests that the government...'overlooked' a 'detail' by 'inadvertence,' and where the government neglected to put on evidence it had readily available to it, out of a faulty interpretation of the law," and "[t]his case is not one in which the misinterpretation can be justified because the law was ambiguous or changing.").

The timing of the government's motion and the character of the testimony the government wishes to present at a reopened hearing also weigh against granting the motion to reopen.  As noted in footnote 2, *supra*, the proffered testimony regarding a lengthy conversation before defendant was removed from the vehicle is contradicted by the evidence of two officers who testified at the original hearing.  (#48 and #49).  The proffered testimony regarding defendant Gray identifying himself as a supervisee is couched in terms of what would have happened if the purported self-identification had not occurred.  (#49).

With regard to timing, the government waited to file the motion to reopen the hearing until *after* the court issued its report and recommendation recommending suppression of the evidence.  (#49).  In the report and recommendation, the court outlined its reasoning, and specifically stated that if "the officers had verified defendant's status as a supervisee, the officers would not have needed any further reasonable suspicion or probable cause to search the car, and the scope of the search would not have been limited by the purpose of the *Terry* stop."  (#47).  The court articulated what testimonial evidence, if presented, would have changed the recommendation, and now, after having the benefit of knowing the court's analysis, the government has moved to reopen the hearing to present such evidence.  (#47 and

49). As in *Kithcart,* "[n]ot surprisingly," the new testimony the government wishes to present at the reopened hearing "nicely filled the lacunae of the first hearing" and "neatly spackled over each of the cracks in the foundation of proof that [the report and recommendation] pointed out." *Kithcart,* 218 F.3d at 218.

The government was given an opportunity to reopen and present additional testimony during the evidentiary hearing. (#48). During closing arguments, the court asked the parties questions regarding the prior knowledge requirement under *Moreno*[3]. *Id.* Defense counsel stated in her closing arguments that the government had the burden to prove that the officers identified defendant as a probationer, and that the government failed to present evidence of the officers' prior knowledge[4]. *Id.* For reasons unrelated to the issue of the officers' prior knowledge (the late production of documents), during final arguments, the court gave both sides an opportunity to reopen, and after final arguments, the court asked if either party "is wanting to present anything else." *Id.* Both sides declined. *Id.*

At the hearing on the motion to reconsider (#49), the government was given an opportunity to explain why it did not offer the proffered evidence at the original hearing, especially after an

---

[3] The court stated that in the *Sampson* case, "the officer had prior knowledge that defendant was a parolee and the Supreme Court said under those circumstances the warrantless stop was okay. And I don't remember seeing anything about whether the parolee actually knew or understood any of it. It seemed to be the court was focusing only on what the officer knew." (#48). The court then discussed the *Moreno* case, and stated that "the Ninth Circuit said police officers cannot retroactively justify a suspicionless search, you know, by -- that they didn't actually have to know that the -- there was a warrant out or the status of the person...as a parolee or a probationer." *Id.* During defendant's closing arguments, the court stated "it seems like the relevant inquiry under the cases is, what did the police officer know, not what did the alleged probationer know." *Id.* During the government's rebuttal argument, the court stated that defense counsel raised a good point: "Has the evidence been presented to me in such a way that I can find that the officers knew Mr. Gray was a probationer before they actually searched the car?" *Id.*

[4] Defense counsel stated that "What gives them the right to go in the car before you know he's on probation? We had nothing here to tell us that when they sent that dog into the car or they went in the car they knew he was a probationer." (#48). Defense counsel also stated "[t]hey had to say, we identified him as David Gray and we invoked the search clause cause I don't think the stop was good. But even if the stop was good, they would have to know he was a probationer before they searched the car. And since no one here knew he was a probationer and they both testified he was pulled out of the car, what allows you to do that? What allows you to pull someone out of a car and search their car until you know they're on probation." *Id.*

opportunity arose at the conclusion of closing arguments. (#55). The essence of the explanation was that the government believed that if the court held that the stop was appropriate, it would also find probable cause for a search of the vehicle without addressing the requirements of *Moreno.* *Id.* The government also took the position that it had demonstrated by a preponderance of evidence that the officers would not have searched defendant Gray's car without prior knowledge of defendant's status as a probationer. *Id.*

Had the government asked to reopen at the close of the original hearing so that it could introduce additional evidence to establish the searching officers' knowledge of defendant's status as a probationer before the search, over defendant's objection, the court would have been faced with a much closer question. A decision either way would have been within the court's discretion. *Blankenship,* 775 F.2d at 740. A similar request, however, made after the court issued its report and recommendation specifically articulating the government's failure to meet its burden, should not be granted. *Id.* at 741.

Examining the effect and prejudice caused by the granting of the motion, the court finds that reopening would provide the government with an unfair advantage. *Id.* If the court permitted the government, or any party for that matter, to review the court's decision, acquire evidence to "spackle over the cracks" articulated in the decision, and to reopen hearings or trials, the court would, in effect, be assisting that party in the presentation of its case. *Kithcart,* 218 F.3d at 218; *See also Coward,* 296 F.3d at 182 (stating that it is the government who bears the burden and that burden cannot be shifted to the court). While the possible prejudice to defendant Gray would be mitigated because he would have an opportunity to cross-examine the new witnesses and present rebuttal testimony, this factor is outweighed by the other factors that support a denial of the motion to reopen.

After exploring the government's explanation, and weighing the timing of the motion, character of the testimony, effect and prejudice caused by the granting of the motion, and the purpose of the

request to reopen, the court finds that the motion to reopen the evidentiary hearing should be DENIED. *Blankenship,* 775 F.2d at 740-41; *Kithcart,* 218 F.3d at 220; *Coward,* 296 F.3d at 181-182.

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that the Government's Motion to Reconsider Report and Recommendation of the United States Magistrate Judge Granting Defendant's Motion To Suppress for Fourth Amendment Violation, and Request to Reopen Evidentiary Hearing (#49) should be DENIED.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 23rd day of May, 2012.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE