UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>DAVID GRAY,<br><br>   Defendant. | 2:11-CR-143 JCM (VCF) |

**ORDER**

Presently before the court are the reports and recommendations of the Honorable Magistrate Judge Cam Ferenbach (docs. #47 and #58) regarding defendant David Gray's motion to suppress evidence pursuant to the Fourth Amendment (doc. #34).

I. Background

Mr. Gray filed the motion to suppress for violation of Fourth Amendment on December 30, 2011. (Doc. #34). The government filed a response on January 23, 2012, (doc. #38) and Mr. Gray replied on February 2, 2012. (Doc. #39). The magistrate judge issued a report and recommendation on March 27, 2012, urging the court to grant Mr. Gray's motion to suppress. (Doc. #47).

Following the magistrate judge's report and recommendation, the government moved for reconsideration. (Doc. #49) Mr. Gray responded (doc. #51) and the government replied (doc. #52). The magistrate judge subsequently issued a second report and recommendation denying the government's motion to reconsider. (Doc. #58). The government has objected. (Doc. #59). Mr. Gray has responded to this objection (doc. #60) and the government has replied (doc. #61). The court now

**James C. Mahan**
**U.S. District Judge**

1 considers both of the magistrate judge's reports and recommendations

2 In his motion to suppress for Fourth Amendment violation, Mr. Gray alleges that police performed an unreasonable search of his vehicle to locate evidence, which was later used to charge him with one count of felon in possession of a firearm. Mr. Gray contends that on December 1, 2010, he entered a public parking garage provided for the use of parolees and probationers. Mr. Gray was there to attend a meeting with his parole officer. On that day, probation officers were conducting searches of all parolees and probationers arriving for scheduled appointments. Mr. Gray notes in his motion, however, that there were no signs or other indications that officers were conducting searches. For unknown reasons, Mr. Gray chose to exit the garage, but officers blocked his vehicle as he attempted to exit.

Officers first performed a contraband search of Mr. Gray and the passenger and uncovered nothing. Officers then deployed a drug-sniffing dog and uncovered marijuana and a handgun in the car. Officers also searched the trunk and discovered two clown masks and a set of plastic gloves. They read text messages on Mr. Gray's phone relating to his possession or use of marijuana. These facts are not disputed by either the government or Mr. Gray.

II. Discussion

Mr. Gray argues that the officers performed an unreasonable search of his vehicle. It is well-established that evidence obtained after an unreasonable search may not constitute proof against Mr. Gray. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). For this reason, a finding that officers did, in fact, conduct an unreasonable search would cause this court to adopt the magistrate judge's ruling and, therefore, grant the motion to suppress. *Id.* at 484 (Rejecting the argument that "a search unlawful at its inception may be validated by what it turns up.").

The terms of Gray's probation require him to "submit [his] person, place of residence, vehicle or areas under [his] control to search at any time, with or without a search warrant." (Doc. #38, Ex. A). Here, the determinative question is whether officers had knowledge that Gray was a probationer prior to conducting the search. *See e.g. Samson v. California*, 547 U.S. 843, 856 (2006) (holding that ". . . an officer would not act reasonably in conducting a suspicionless search absent knowledge that

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  the person stopped for the search is a parolee."); *See also Moreno v. Baca*, 431 F.3d 633, 641 (9th

2  Cir. 2005) ("Officers cannot retroactively justify a suspicionless search . . . on the basis of an after-

3  the-fact discovery of . . . a parole condition.); *United States v. Montero-Camargo*, 208 F.3d 1122,

4  1139 (9th Cir. 2000) (a turnaround [from a checkpoint] alone is not enough in and of itself to create

5  reasonable suspicion.).

6        Officers argue that they could reasonably discern that Mr. Gray was a probationer because

7  the garage was clearly marked as "Parole and Probation" parking. (Doc. #38, at 6). Mr. Gray

8  argues–and this court agrees–that the vehicle could have entered the garage for a number of reasons

9  unrelated to parole or probation. (Doc. #34, at 6).  There was no point at which Mr. Gray was

10  required to confirm his business or purpose of visit prior to entering the garage. As such, there was

11  no way officers were truly aware of his status as a probationer simply because he entered the garage.

12        The government asserts that Mr. Gray's attempt to exit the garage further supported their

13  suspicion because he "acted in a manner indicative of a supervisee seeking to avoid being searched."

14  (Doc. #38, at 6). However, the government offers no argument as to why, exactly, attempting to exit

15  the garage indicated that he was a "supervisee seeking to avoid being searched."

16        Further, the government contends that they "perceived [Mr. Gray's] flight" as accompanying

17  a "deer in the headlight look" when attempting to leave the garage. (Doc. #38 at 9). However, the

18  government also admits that they blocked Mr. Gray's car when he attempted to exit. Assuming Mr.

19  Gray did have such a look on his face, any ordinary man is likely to react in this manner upon having

20  his vehicle blocked by a police officer. *Id.* at 2. Without further support, the fact that Mr. Gray

21  attempted to exit the garage and appeared as a "deer in headlights" upon having his vehicle blocked

22  is simply not enough to determine that he was acting as a "supervisee seeking to avoid being

23  searched." *Id*. at 6.

24        Finally, the government states that the officers had determined Mr. Gray's identity and were

25  aware of his status as a probationer "by the time they searched his vehicle." (Doc. #38, at 7). The

26  magistrate judge found that the government did not present a timeline of events to establish that the

27  officers actually knew Mr. Gray's status as a supervisee prior to the search. (Doc. #47, at 14). In its

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

motion to reconsider the report and recommendation, the government posits that the officer would testify that he was "sure the defendant identified himself as a supervisee, because if [he] had not identified himself, [the officer] would have taken other steps to determine [Mr. Gray's] status. . ." (Doc. #58, at 5). This court finds that the government has failed to establish a definite timeline because it fallaciously bases its argument on what an officer *did not* do to prove what must have occurred.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that the report and recommendation of Magistrate Judge Ferenbach regarding the suppression of evidence (doc. #47) be, and the same hereby is, ADOPTED in its entirety.

IT IS THEREFORE ORDERED that defendant's motion to suppress (doc. #34) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the report and recommendation of Magistrate Judge Ferenbach regarding the government's motion to reconsider (doc. #58) be, and the same hereby is, ADOPTED in its entirety.

IT IS THEREFORE ORDERED that plaintiff's motion to reconsider (doc. #49) be, and the same hereby is, DENIED.

DATED June 27, 2012.

_____
**UNITED STATES DISTRICT JUDGE**